## Transfer of Building and Loan Association Stock in Name of Decedent.

MOYER, Dep. Att'y-Gen., May 2, 1928.—You have advised this department that in a letter of Hon. George W. Woodruff, former Attorney-General, dated March 27, 1925, addressed to Hon. S. S. Lewis, then Auditor General, it was held by the Attorney-General that where the practice of a building and loan association is to require the executor or administrator of a decedent's estate to transfer (or "retransfer," as the term is used by some associations) to the association the certificates of stock, which were standing in the name of such decedent, for the purpose of cancellation before paying to the estate the amount due on said stock, sections 35 and 36 of the Act of June 20, 1919, P. L. 521, prohibit such transfer of stock to be made until the tax due the Commonwealth has been paid and a waiver or consent by you, as Auditor General, presented to the building and loan association, unless you consent thereto in writing prior to such payment. You now inquire whether, in the case where the practice of a building and loan association is to permit the cancellation or withdrawal of its stock without a formal transfer thereof to it, the executor or administrator of a deceased stockholder must likewise obtain from you, as Auditor General, a consent or waiver in writing and present the same to the association before allowing such stock to be withdrawn or canceled.

Section 35 of the Act of June 20, 1919, P. L. 521, provides, *inter alia*, as follows: "No executor, administrator or trustee of any decedent, resident or non-resident, shall assign or transfer any stock of any corporation of this Commonwealth . . . standing in the name of such decedent, . . . subject to the tax hereinbefore imposed, until such tax has been paid, unless the Auditor General consents to such transfer prior to such payment in manner hereinafter provided."

Section 36 of said act provides, *inter alia*, as follows: "No corporation of this Commonwealth . . . shall transfer any stock of such corporation . . . standing in the name of a decedent, whether resident or non-resident, . . . .

unless the Auditor General has filed with said corporation . . . a certificate that the tax imposed by this act on the transfer of such stock has been fully paid, or otherwise consents thereto in writing. . . ."

I have read a copy of the letter of former Attorney-General Woodruff, referred to by you. I am in accord with the determination of the former Attorney-General that where the practice of a building and loan association requires the actual transfer to it by the executor or administrator of a decedent of stock standing in the name of the decedent, for the purpose of cancellation before paying to the estate the amount due on said stock, under the express terms of sections 35 and 36 of the Act of June 20, 1919, P. L. 521, such transfer or assignment of the stock of the building and loan association cannot be made until such tax has been paid, unless the Auditor General consents in writing to such transfer prior to such payment.

Under the question as you have propounded it in your letter, a different practice is followed by the building and loan association. The association allows the cancellation or withdrawal of its stock without a formal transfer thereof to it. The executor or administrator presents to the association the certificates of stock standing in the name of the decedent; the association pays to the representative of the estate the withdrawal value of said stock; requires said representative to sign a receipt, the form of which is usually printed on the back of the certificate, showing receipt of payment of the amount due on said certificate or certificates of stock, which are thereupon surrendered to said association and the executor or administrator makes acknowledgment in said receipt that said stock is surrendered to the association. This practice, followed by most building and loan associations, is in pursuance to the provisions of section 37 of the Act of April 29, 1874, P. L. 73, which provides that any stockholder of a building and loan association "wishing to withdraw from said corporation shall have power to do so by giving thirty days' notice of his or her intention to withdraw, when he or she shall be entitled to receive the amount paid in by him or her, less all fines and other charges; . . . upon the death of a stockholder, his or her legal representatives shall be entitled to receive the full amount paid in by him or her and legal interest thereon, first deducting all charges that may be due on the stock; no fines shall be charged to a deceased member's account from and after his or her decease, unless his legal representatives of such decedent assume the future payments on the stock." Under this provision, the legal representatives of a decedent are authorized to withdraw the stock of a building and loan association, in the name of such decedent and receive the withdrawal value thereof.

Several provisions of the Act of April 10, 1879, P. L. 16, also have to do with the withdrawal and cancellation of the shares of stock of building and loan associations. We deem it unnecessary, however, to discuss these provisions here.

It appears from the provisions of said Acts of 1874 and 1879 that the holders of the stock of building and loan associations, unlike the holders of stock of other corporations, have the right to receive from the association the withdrawal value of their stock without a sale and formal assignment and transfer thereof. His Honor Judge Fox, writing the opinion of the Dauphin County court in the case of Handler v. Harrisburg Mutual Loan Ass'n, just recently reported in the advance sheets of the Dauphin County Reports, volume 31, page 246, said (page 247) : ". . . If it is operating as a building and loan association, members under certain conditions as provided by the statute may withdraw their stock and receive money therefor. This

is a power and privilege peculiar to building and loan associations and their members, but to no other corporation of our State."

The withdrawal of stock from a building and loan association and the receipt of the withdrawal value thereof is not an assignment or transfer of said stock within the meaning of the provisions of sections 35 and 36 of the Act of June 20, 1919, P. L. 521.

You are, therefore, advised that in the case where a building and loan association permits the withdrawal or cancellation of its stock standing in the name of a decedent, without a formal transfer thereof to it, the executor or administrator of a deceased stockholder need not obtain the Auditor General's consent to such withdrawal prior to the payment of transfer inheritance tax to which said estate may be subject.

From C. P. Addams, Harrisburg, Pa.